19-1580 BPG

## AN AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Benjamin Parker, being first duly sworn, hereby depose and state as follows:

1. I submit this affidavit in support of an application for a search and seizure warrant authorizing the search of the following cellular telephone, which is stored in a secure manner at the Baltimore Field Division of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), located at 31 Hopkins Plaza, Suite 500, Baltimore, Maryland: one black Apple iPhone cellular phone, IMEI: 357341096863367, T-Mobile SIM #89012601727048390060 (the "**Target Telephone**"). The **Target Telephone** is also described in Attachment A.

2. The applied-for search and seizure warrant would authorize the forensic examination of the **Target Telephone** for the purpose of identifying electronically stored data listed in Attachment B.

3. As set forth further in this affidavit, probable cause exists to believe that the **Target Telephone** contains evidence, fruits, and instrumentalities of the offense of distribution of and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a).

4. The **Target Telephone** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same condition as when the **Target Telephone** first came into the possession of the law enforcement. Any search of the **Target Telephone** will occur in an office or laboratory setting at premises controlled by ATF or its authorized representatives.

### AFFIANT BACKGROUND

5. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms, and

1

Explosives ("ATF"). I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Unit 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in offenses enumerated in 18 U.S.C. § 2516. Specifically, I am a Special Agent with the ATF and have been so employed since 2015. I am currently assigned to the Baltimore Field Division, Group III, a group charged with investigating controlled substance and firearm violations.

6. As a Special Agent, I have participated in complex investigations focusing on controlled dangerous substance ("CDS") trafficking, gangs, and illegal firearms. I have conducted covert surveillance of suspected CDS traffickers, interviewed individuals involved in gangs and the CDS trafficking trade, participated in multiple Title III wiretap investigations (both as a monitor and member of surveillance teams), participated in the execution of state and federal search and arrest warrants involving CDS traffickers and violent offenders, and participated in the seizure of numerous firearms and controlled dangerous substances. Through my training and experience, I have become familiar with the manner in which illegal CDS are transported, stored, and distributed, the methods of payment for such CDS, and the manner in which CDS traffickers communicate with each other. I also know that CDS traffickers commonly use cell phones to facilitate the distribution of CDS.

7. Specifically, I know that persons engaged in CDS trafficking use cellular telephones to coordinate with suppliers, customers, and co-conspirators and frequently switch phones or utilize multiple cellular telephones to evade law enforcement. I am familiar with the habits, methods, routines, practices and procedures commonly employed by persons engaged in trafficking CDS. From my training, experience and conversations with other agents and officers,

I am familiar with the techniques employed by CDS traffickers to keep records of their drug trafficking activities, to conceal proceeds of their illegal conduct, and to evade law enforcement. Based on this specialized experience, and participation in other similar CDS trafficking investigations, I know that individuals who are involved in the distribution of CDS frequently share combinations of common characteristics, some of which are as follows:

> **a.   Keeping and storing of documents and records.** Persons involved in CDS trafficking frequently keep and maintain records of their various activities, which can now be kept and organized on cellular devices. Such documents include, but are not limited to payment logs, contact information for other traffickers and suppliers, wired money transactions, savings pass books, bank accounts, various forms of commercial paper, address books, records, receipts, travel receipts and other papers relating to the ordering, transportation, sale and distribution of contraband. Records often contain identifying data of co-conspirators. I also know that traffickers frequently maintain these records for long periods; sometimes traffickers keep these records years after a transaction occurred.
>
> **b.   Additional use of cellular telephones.** Persons involved in and CDS trafficking frequently utilize cellular telephones to facilitate illegal transactions. In investigations such as this, cellular telephones serve as direct evidence of the criminal conspiracy to distribute contraband. A suspect's possession of a cellular telephone with a certain call number identified during the investigation establishes that the suspect uses the cellular telephone and this constitutes evidence of the suspect's participation in the conspiracy. Cellular telephones may also contain call histories, stored numbers, contact lists and stored text messages of phones that often leads to the identification of co-conspirators. I also know that traffickers frequently maintain and use numerous cellular telephones in an effort to conceal their activities. Cellular telephones frequently contain communications (i.e., by telephone, text message, email, social media, or otherwise) with customers, suppliers, and co-conspirators. In addition, traffickers frequently take and keep photographs of themselves, their associates, their proceeds, and their firearms and narcotics on their cellular telephones. In a criminal conspiracy investigation such as this, photographs of co-conspirators together serve as evidence of their association with one another and their participation in the conspiracy.

8.   The information set forth in this affidavit derives from my personal knowledge and observations, discussions with other ATF agents and employees, other law enforcement officers, and witnesses, and my review of police reports and public records. All conversations and

3

statements described in this affidavit are related in substance and in part unless otherwise indicated. Because I submit this affidavit for the limited purpose of establishing probable cause for a search warrant, I have not included every fact known to me concerning this investigation. Rather, I set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause.

## PROBABLE CAUSE

9. On July 11, 2018, an undercover federal task force officer (the "UC") purchased 25 zip lock bags of crack cocaine from an individual in the 500 block of Edgewood Avenue in Baltimore, Maryland. During this controlled drug purchase, the UC was given a phone number 443-881-0443 for contact during future drug purchases. The crack cocaine was submitted to the Baltimore City Police Evidence Control Unit ("ECU") to be analyzed, and later determined to contain cocaine base.

10. On July 18, 2018, the UC called 443-881-0443 and spoke to a man, later identified as Corey BELL, about purchasing narcotics. BELL told the UC that he was "out" on Denison. Based on my training and experience, I believe that this meant that BELL was in the vicinity of Denison Street selling narcotics. The UC then traveled to the area of Denison Street and Edmondson Avenue in Baltimore, Maryland, and contacted BELL via the 443-881-0443. BELL instructed the UC to travel to Denison Street north of Edmondson Avenue. The UC drove to the location and then waited for BELL. BELL ultimately walked up to the UC's vehicle and entered it. BELL told the UC to drive across Harlem Avenue and stop the vehicle. BELL then sold the UC 21 zip lock bags of crack cocaine in exchange for $300. BELL then exited the UC's vehicle and the UC drove away from the location. The crack cocaine was submitted to ECU to be analyzed and later found to contain cocaine base.

4

11. On August 8, 2018, the UC called BELL via 443-881-0443. During the call, BELL agreed to sell the UC crack cocaine. On the same day, BELL and the UC met at the 600 block of Denison Street. BELL entered the UC's vehicle and sold the UC $1,450 of crack cocaine, handing the UC six bags that each contained approximately 3.5 grams of crack cocaine. BELL then told the UC that he could sell the UC additional crack cocaine. BELL then left the UC's vehicle and returned a short time later. BELL then sold the UC $250 of crack cocaine, handing the UC 14 zip lock bags of crack cocaine. BELL then exited the UC's vehicle and the UC then drove away from the location. The crack cocaine was submitted to ECU to be analyzed and later found to contain cocaine base.

12. On September 19, 2018, the UC contacted BELL via 443-881-0443 and arranged to buy drugs from BELL. Later that day, the UC met with BELL in the 600 block of Denison Street in Baltimore, Maryland, and purchased approximately $2,000 of crack cocaine from BELL. The crack cocaine was submitted to ECU to be analyzed and was later found to contain cocaine base.

13. On April 19, 2019, Baltimore City Police Department officers arrested BELL in Baltimore, Maryland, pursuant to a federal arrest warrant issued by a United States Magistrate Judge for the District of Maryland. During a search incident to BELL's arrest, an officer recovered the **Target Telephone**, as well as 24 small baggies of suspected crack cocaine from BELL's person. The **Target Telephone** was retained for evidence and the suspected crack cocaine was submitted to ECU to be analyzed. Based on the packaging and quantity of the suspected crack cocaine recovered, I believe BELL possessed the drugs with the intent to distribute them.

14. I know based on my training and experience, that drug traffickers use cellular telephones to coordinate with suppliers, customers, and co-conspirators and frequently switch phones or utilize multiple cellular telephones to evade law enforcement. Based on the drug-

trafficking evidence recovered, I believe that the **Target Telephone** will contain evidence of distribution of and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a).

## **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

15. Based on my knowledge, training, and experience, I know that electronic devices such as cellular phones can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

16. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Target Telephone** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Target Telephone** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

17. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

18. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

19. Based on the information set forth in this affidavit, I believe probable cause exists to believe that in the **Target Telephone**, there is evidence, fruits, and instrumentalities of the crime

of distribution of and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a). I respectfully request that this Court issue a search warrant for the **Target Telephone** and authorize the search and the seizure of the items described in Attachments A and B, where applicable, which constitute fruits, evidence and instrumentalities of violations of 21 U.S.C. § 841(a).

Respectfully submitted,

_____
Special Agent Benjamin Parker
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on May ___3___ 2019

_____
Hon. Beth P. Gesner
United States Magistrate Judge

19-1580 BPG

## ATTACHMENT A

### Items to be Searched

The **Target Telephone** is a black Apple iPhone cellular telephone, IMEI: 357341096863367, T-Mobile SIM #89012601727048390 60. The **Target Telephone** is in the custody of the ATF in the District of Maryland.

## ATTACHMENT B

All records contained in the items described in Attachment A which constitute evidence of violations of 21 U.S.C. § 841(a) as outlined below:

1. Records of narcotics transactions including, but not limited to, books, ledgers, receipts, notes, and other papers relating to the manufacture, ordering, transportation, possession, and distribution of controlled substances.

2. Financial instruments and records and other records or documents relating to narcotics-trafficking activity, the disposition of narcotics proceeds, or the obtaining, secreting, transfer, concealment, and/or expenditure of money, including, but not limited to, currency, bank records, tax documents, bank checks, cancelled checks, cashier's checks, receipts and invoices of expenditures, safe deposit keys, Western Union receipts, international money wires/transfers, money orders, stocks, bonds, precious metals, jewelry, vehicles, and real estate records.

3. Records that identify co-conspirators.

4. Any and all digital images and videos of persons associated with this investigation as described in the Affidavit.
5. Text messages to and from the Target Telephone that refers to or relates to the crime of 21 U.S.C. § 841(a).
6. Records of incoming and outgoing voice communications that refer or relate to the crime of 21 U.S.C. § 841(a).
7. Voicemails or voice recordings that refer or relate to the crimes of 21 U.S.C. § 841(a).

8. Any and all records related to the location of the user(s) of the devices.

9. Evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

10. Evidence of software that would allow others to control the Target Telephone, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

11. Evidence of the lack of such malicious software;

12. Evidence of the attachment to the Target Telephone of other storage devices or similar containers for electronic evidence;

13. Evidence of counter forensic programs (and associated data) that are designed to eliminate data from the Target Telephone;

14. evidence of the times the Target Telephone was used;

15. passwords, encryption keys, and other access devices that may be necessary to access the Target Telephone;

16. documentation and manuals that may be necessary to access the Target Telephone or to conduct a forensic examination of the Target Telephone;

17. Contextual information necessary to understand the evidence described in this attachment.

18. With respect to the search of any of the items described above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment (including CDs, DVDs, thumb drives, flash drives, hard disk drives, or removable digital storage media, software or memory in any form), the search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

    a. surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);
    b. "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;
    c. "scanning" storage areas to discover and possible recover recently deleted files;
    d. "scanning" storage areas for deliberately hidden files; or
    e. performing key word searches or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

If after performing these procedures, the directories, files or storage areas do not reveal evidence of the specified criminal activity, the further search of that particular directory, file or storage area, shall cease.